IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEFFREY SCOTT CLEGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-232-WC |
| | ) | |
| DOCTOR BRADFORD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is before the court on an amended complaint filed by Jeffrey Scott Clegg, a former state inmate. In this complaint, Clegg alleges Dr. Bradford, an optometrist contracted to provide services to state inmates, violated his constitutional rights by failing to timely provide him a new pair of prescription eyeglasses during a prior term of incarceration at the Bullock Correctional Facility. Doc. 5 at 7–8. Clegg alleges the defendant deprived him of due process and equal protection with respect to provision of his eyeglasses. Despite the assertion of a due process violation, the claim presented by Clegg regarding the alleged denial of adequate optometry services arises under the Eighth Amendment and its protection against deliberate indifference to an inmate's health, not the Due Process Clause. Clegg seeks a declaratory judgment, injunctive relief and monetary

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

damages for the alleged violations of his constitutional rights. Doc. 5 at 9, Doc. 33 at 1 & Doc. 49 at 1.

The defendant filed a special report, supplemental special report and relevant evidentiary materials in support of his reports, including affidavits and certified copies of Clegg's medical records, addressing the claims raised in the complaint. In these documents, Dr. Bradford denies he acted with deliberate indifference to Clegg's medical needs and argues Clegg fails to allege a cognizable equal protection claim.

After reviewing the special reports filed by the defendant, the court issued an order on August 23, 2016 directing Clegg to file a response to each of the arguments set forth by the defendant in his reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 22 at 1–2. The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 22 at 3. Clegg filed responses to this order, including sworn declarations.

Pursuant to the directives of the order entered on August 23, 2016, the court now treats the defendant's reports as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendant.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Rule 56(a), Fed.R.Civ.P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beard v. Banks*, 548 U.S. 521, 529 (2006) (holding that a court "must examine the record to see whether the [party moving for summary judgment], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated the absence of a genuine [dispute] of material fact, and his entitlement to judgment as a matter of law.") (internal citations and quotation marks omitted); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton*

*v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

When the moving party meets its evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. At this juncture, the court "must determine whether [the plaintiff], who bears the burden of persuasion has by affidavits or as otherwise provided in Rule 56 . . . set forth specific facts showing that there is a genuine [dispute of material fact] for trial." *Beard*, 521 U.S. at 529 (internal citations and quotation marks omitted); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in

substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011).

> [This court] recognize[s] that at this stage [it] must draw "all justifiable inferences in [the plaintiff's] "favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, however, we must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. *Overton [v. Bazetta*, 539 U.S. 126, 132 (2003)]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard*, 548 U.S. at 530.

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *McKeithen v. Jackson*, 606 F. App'x 937, 938 (11th Cir. 2015); *Ivory v. Warden*, 600 F. App'x 670, 675 (2015). Thus, Clegg's pro se status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record, including Clegg's medical records. After this review, the court finds that Clegg has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant on his claims regarding alleged violations of his constitutional rights.

## III. DISCUSSION[2]

### A. Deliberate Indifference

The claims presently before this court address actions taken by Dr. Bradford in an effort to fit Clegg for eyeglasses from October 19, 2015 until mid-April of 2016. Specifically, Clegg alleges Dr. Bradford acted with deliberate indifference to his need for new eyeglasses because Dr. Bradford did not initially determine the correct prescription for his eyeglasses and then failed to timely order eyeglasses in accordance with a prescription issued by an outside ophthalmologist. Doc. 5 at 7–8. Dr. Bradford denies Clegg suffered a serious medical need — a need which, if left untreated, posed a substantial risk of serious harm — or that he acted with deliberate indifference to Clegg's eye care. Doc. 21 at 11–14. It is likewise undisputed that throughout the time relevant to the complaint Clegg maintained a pair of eyeglasses within his possession which adequately corrected his vision.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Medical personnel may not subject an inmate

---

[2]The court limits its review to the allegations set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend his complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

6

to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment.").

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

The law is well-settled that establishment of both objective and subjective elements are necessary to demonstrate a violation of the protections afforded by the Eighth Amendment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official [was] aware of this substantial risk, the

7

official must [have] react[ed] to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001) (en banc), abrogated on other grounds by *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 561–63 (2007); *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (holding that "a prisoner-plaintiff must first demonstrate the existence of an objective substantial risk of harm" to proceed on a deliberate indifference claim). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, [providing security for inmates], or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986); *Estelle*, 429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless

disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint because "misdiagnosis and inadequate treatment involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that negligence in misdiagnosis of pituitary tumor not sufficient to show deliberate indifference); *Barr v. Fla. Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (finding plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3–4 (M.D. Fla. Aug. 30, 2012) (finding that misdiagnosis of inmate with Ganglion cyst which "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on [inmate's] lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . . At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved. Conclusory allegations sounding in malpractice or negligence

do not state a federal constitutional claim.") (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things[:] awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that a defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

The Eleventh Circuit has distinguished deliberate indifference from mere disagreement over medical treatment, or even medical malpractice, as follows:

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)]. Medical treatment

11

> violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotation marks). To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (citation and internal quotation marks omitted); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient); *Amarir v.*

*Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm.").

Dr. Bradford submitted affidavits and relevant medical records in response to the claims lodged against him. Those portions of the affidavits set forth herein are corroborated by the objective medical records contemporaneously compiled during the treatment process. Dr. Bradford addresses the allegation of deliberate indifference, in relevant part, as follows:

> In my position as an independent contractor with Institutional Eye Care, I provide optometry services to inmates, including performing eye exams and writing prescriptions for corrective lenses. I perform eye examinations at Bullock County Correctional Facility on a monthly basis.
> It is my understanding that inmates typically receive an eye examination and eyeglasses every two years. Exceptions are made for diabetic and chronic care patients who are placed on my schedule more frequently by Corizon.
> I do not schedule inmates for examinations. It is my understanding that inmates, such as Mr. Clegg, must request optometry services before being placed on my schedule by Corizon.
> I do not personally maintain or keep records for inmates. Inmate records are maintained by Corizon at the correctional facility. I do not have access to these records unless the inmate is scheduled for an eye examination. At the time of the eye examination, an inmate's record is made available to me by Corizon.
> I first became aware of the allegations made by Inmate Jeffrey Scott Clegg on May 10, 2016. I have now reviewed the Complaint and Amended Complaint . . ., as well as pertinent sections of Mr. Clegg's medical chart

provided by Corizon, LLC. . . . . I am familiar with the optometry care provided to Mr. Clegg during his incarceration at the Bullock County Correctional Facility.

I have seen Mr. Clegg for vision related issues at Bullock County Correctional Facility. Based on my review of records provided by Corizon, I provided optometry services to Mr. Clegg on October 19, 2015 and November 9, 2015. [As of June 28, 2016,] I have not provided optometry services to Mr. Clegg since November 9, 2015.

I examined Mr. Clegg on October 19, 2015. I performed a full dilated eye exam, using an auto-refractor and an indirect ophthalmoscope. These instruments are accurate and standard equipment for optometrists. I wrote a prescription for corrective lenses based on my examination and Mr. Clegg's responses. [Dr. Bradford issued a prescription for eyeglasses as indicated by this examination. Institutional Eye Care ordered the prescribed eyeglasses which Clegg received in approximately two weeks.]

Mr. Clegg returned to me on November 9, 2015, complaining that the eyeglasses he received from Institutional Eye Care were not strong enough. I performed a full dilated eye exam, using an auto-refractor and an indirect ophthalmoscope. Based on my examination and Mr. Clegg's responses, I determined that Mr. Clegg did not require an outside optometry appointment and that the October 19, 2015 prescription was correct.

In late March 2016, I personally requested Mr. Clegg's records from Corizon in order to respond to a complaint Mr. Clegg filed with the Board of Optometry on November 9, 2015. I had not seen the records prior to that time as Mr. Clegg had not presented for another appointment since November 9, 2015. I was unaware that Dr. Siddiq, the Corizon medical director at Bullock County Correctional Facility, had referred Mr. Clegg to Eye Center South in Dothan, Alabama [for evaluation on December 17, 2015]. [Dr. Siddiq signed for receipt of the report from Eye Center South on January 4, 2016. Doc. 16-2 at 7. The medical records indicate that Clegg refused eye dilation and an eye appointment scheduled by Corizon on January 10, 2016. Doc. 16-2 at 12.]

When I reviewed the Eye Center South records in late March 2016, I understood that Mr. Clegg could see 20/20 out of his existing eyeglasses. I was unaware that Mr. Clegg had two pairs of eyeglasses, an "old" pair and the "new" pair provided by Institutional Eye Care until this suit was filed. Mr. Clegg did not bring his "old" or existing eyeglasses to me for examination in October or November of 2015. [As noted by the ophthalmologist at Eye Center South, Mr. Clegg retained possession of his "old glasses" during the period of time relevant to this case with which his corrected vision is 20/20. Doc. 16-2 at 8.]

Since this suit was filed, I have again reviewed the records from Eye Center South in light of Mr. Clegg's allegations. I understand that I was

14

> mistaken in understanding that his vision was 20/20 out of the eyeglasses provided by Institutional Eye Care according to my [October 19, 2015] prescription. I have submitted an order for corrective lenses according to Dr. Wendy Huang's recommendation to Bullock County Correctional Facility for Institutional Eye Care to fill the prescription. Mr. Clegg should receive these eyeglasses within the next two weeks.
>
> Following inmate eye examinations, I am not involved in the procurement of eyeglasses for inmates, such as Mr. Clegg. Eyeglasses are sent directly from Institutional Eye Care to the facility.

Doc. 16-1 at 2–6 (paragraph numbering omitted).

In a subsequent affidavit, Dr. Bradford advises that since Clegg did not receive new eyeglasses from Institutional Eye Care pursuant to his order issued in June of 2016 he again "[o]n August 10, 2016 . . . ordered eye glasses for the Plaintiff using the eye glass prescription from Dr. Wendy Huang at Eye Center South in Dothan, Alabama." Doc. 41-1 at 4. Clegg received these eyeglasses on August 22, 2016.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by Dr. Bradford did not violate Clegg's constitutional rights. Specifically, there is no evidence upon which the court could conclude that Dr. Bradford acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (internal quotation marks and citation omitted). Rather, the evidence before the court demonstrates Dr. Bradford evaluated Clegg each time he reported for optometry services, issued a prescription for eyeglasses as indicated by the results of his examinations, and upon receipt of information indicating Clegg had received a prescription from an off-site ophthalmologist, issued prescriptions for eyeglasses in accordance with the ophthalmologist's instructions. Whether Dr. Bradford "should have [utilized] additional

diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal citation omitted). Additionally, neither negligence in diagnosis or treatment nor medical malpractice constitute deliberate indifference actionable in a § 1983 case. *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771. Consequently, Clegg's claim that Dr. Bradford issued a prescription which did not provide appropriate corrective vision does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *see Hamm*, 774 F.2d at 1505 (holding that inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (holding that simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

Clegg's self-serving assertion of deliberate indifference does not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same). Moreover, Clegg has failed to present any evidence showing Dr. Bradford knew that the manner in which he provided treatment created a substantial risk to Clegg's health and with

this knowledge consciously disregarded the risk. The record is therefore devoid of evidence—significantly probative or otherwise—showing that Dr. Bradford acted with deliberate indifference to a serious medical need experienced by Clegg. Thus, summary judgment is due to be granted in favor of Dr. Bradford on Clegg's deliberate indifference claim.

## B. Equal Protection

In the amended complaint, Clegg alleges the actions of Dr. Bradford deprived him of "equal protection, as [he] has the right . . . to receive the proper and corrective eyeglasses so that his vision is corrected." Doc. 5 at 8. This conclusory allegation does not assert a cognizable equal protection claim. *Muhammad v. Sapp,* 388 F. App'x. 892, 899 (11th Cir. 2010); *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318–19 (11th Cir. 2006); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . . The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611–12 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D.Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him

17

based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)." *Sweet*, 467 F.3d at 1318–19. "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey*, 481 U.S. at 292.

Clegg fails to identify any similarly situated inmate who received differential favorable treatment from the defendant. Thus, Clegg's "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. Even had Clegg identified a similarly situated inmate, his equal protection claim nevertheless provides no basis for relief

> because [Clegg] has not alleged . . . that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest. He has not even claimed that he was treated differently from others

18

> because of race, religion, or national origin. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The [unequal provision of medical services] . . . to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton*, 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original). Clegg "fails to present facts which plausibly show that his treatment was the result of purposeful or intentional discrimination." *Raines v. Wise*, 2013 WL 4521357 at *1–2 (N.D. Ala. Aug. 26, 2013); *Muhammad,* 388 F. App'x. at 899 ("[T]the equal protection clause prohibits only intentional discrimination[.]"); *quoting Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1212 n. 6 (11th Cir. 2008). Thus, the mere conclusory allegation of an equal protection violation entitles Clegg to no relief in this cause of action.

### IV. CONCLUSION

Accordingly, it is ORDERED that:

1. The defendant's motion for summary judgment is GRANTED.

2. Judgment is GRANTED in favor of the defendant.

3. This case is DISMISSED with prejudice.

4. No costs are taxed.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 15th day of November, 2018.

                                        /s/ Wallace Capel, Jr.
                              CHIEF UNITED STATES MAGISTRATE JUDGE